# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| Jane Doe,<br><br>      Plaintiff,<br><br>   v.<br><br>KRISTI NOEM, in her official capacity, Secretary of the Department of Homeland Security;<br><br>TODD LYONS, in his official capacity, Acting Director of the Immigration and Customs Enforcement;<br><br>      Defendants. | Case No. |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Jane Doe[1], for her Complaint against Defendants KRISTI NOEM, Secretary of the Department of Homeland Security ("DHS") and TODD LYONS, Acting Director of the Immigration and Customs Enforcement ("ICE"), each in their official capacity, states and alleges as follows:

## INTRODUCTION

1. Plaintiff Jane Doe is an individual in lawful F-1 visa status who is maintaining her status by being employed pursuant to post-graduate Optional Practical Training ("OPT") employment

---

[1] Plaintiff will separately file a motion to proceed pseudonymously.

authorization. The OPT is a benefit available to international students in F-1 status that allows them to work in the U.S. in their field of study, either before or after completing their studies.

2.     The Student and Exchange Visitor Information Systems (SEVIS) is a government database that tracks international students' compliance with their F-1 status, which is used by ICE to monitor student status.

3.     Plaintiff is one of hundreds, if not more, F-1 students nationwide whose SEVIS record has been abruptly terminated by DHS since approximately April 4, 2025 with no lawful or valid basis.[2]

4.     Plaintiff is a Chinese national and recent Ph.D. graduate who was legally working in Illinois under the STEM OPT (a 24-month extension of the standard OPT for F-1 students who hold degrees in eligible STEM fields). On April 8, 2025, DHS terminated her SEVIS record, citing "OTHERWISE FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has had their VISA revoked. SEVIS record has been terminated," effectively stripped Plaintiff of her lawful status overnight, rendering her ineligible to work and at risk of removal, without any advance warning or explanation.

5.     Plaintiff has never been convicted of any crime. Other than a speeding ticket—which was promptly paid—her only encounter with law enforcement was a 2017 arrest for a misdemeanor charge that was promptly dismissed with no conviction. There is no legitimate basis to brand her as "failing to maintain status" or to terminate her F-1 status. DHS provided no notice, no evidence of wrongdoing, and no opportunity to respond to this status termination.

---

[2] *See* Binkley, Collin, Annie Ma, and Makiya Seminera, *Federal officials are quietly terminating the legal residency of some international college students, Associated Press, April 4, 2025,* https://apnews.com/article/college-internationalstudent-f1-visa-ice-trump-7a1d186c06a5fdb2f64506dcf208105a.

6.     As a result of DHS's actions, Plaintiff's life has been thrown into turmoil. She has been placed on unpaid leave by her employer and stands to lose her job and the health insurance tied to it. She was on the verge of losing her deposit to purchase a home together with her husband who is a lawful resident on H-1B visa, but that opportunity has collapsed because her lawful status and thus her work authorization and income have been taken away. Plaintiff lives in constant fear that immigration agents could arrest and remove her from the United States before she can defend her rights.

7.     Plaintiff alleges that Defendants' termination of her SEVIS record was unlawful, arbitrary and capricious, and contrary to law and agency policy, in violation of the APA and her Fifth Amendment due process rights. She seeks declaratory and injunctive relief to restore her lawful status and enjoin any enforcement actions against her on the basis of the unlawful termination.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1346(b). An actual and justiciable controversy exists between the parties under 28 U.S.C. §2201, and this Court has authority to grant declaratory and injunctive relief. Id. §§ 2201, 2202. The Court also has authority under the APA. 5 U.S.C. §§ 701–06.

9.     Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391 because Plaintiff resides and works in this District, and a substantial part of the events or omissions giving rise to the claim occurred here. Defendants have waived their sovereign immunity for suits seeking injunctive relief against constitutional and statutory violations. 5 U.S.C. § 702.

**PARTIES**

10.     Plaintiff is a 32-year-old Chinese citizen who has resided in Glenview, Illinois since May 2023. She first came to the U.S. as a student and earned her B.S. in Bakery Science and Management and M.S. in Grain Science and Industry from Kansas State University. She obtained her Ph.D. in Animal and Food Sciences from University of Delaware in 2023 and has lawfully resided and worked in IL in F-1 student status under the OPT program. By virtue of her STEM degree, she was authorized for a 24-month STEM OPT extension, allowing her to work full-time in her field of study. She was hired as a scientist by an Illinois-based food company and was in valid F-1/OPT status, until Defendants illegally terminated her SEVIS record.

11.     Defendant Kristi Noem is the Secretary of the Department of Homeland Security. She is sued in her official capacity.

12.     Defendant Todd Lyons is the Acting Director of the Immigration and Customs Enforcement ("ICE"), under the DHS. He is sued in his official capacity.

**Legal Background**

13.     The Immigration and Nationality Act (INA) provides that foreign nationals may enter and remain in the U.S. for specific purposes, including full-time study. Noncitizens admitted as academic students fall within the F-1 visa category under 8 U.S.C. § 1101(a)(15)(F). A nonimmigrant visa itself, such as an F-1, controls the noncitizen's entry into the United States. However, once admitted, the individual obtains a separate legal status that governs their stay in the U.S. F-1 status, distinct from the visa document, authorizes the student to remain in the U.S. for the duration of their studies, provided they comply with all regulatory requirements associated with that classification.

14.     Under federal regulations at 8 C.F.R. § 214.2(f), students are required to maintain full-time enrollment, avoid unauthorized employment, and update their personal and academic information through their school's Designated School Official (DSO). Completion of a degree program does not end F-1 status automatically; rather, students who successfully finish their program may be eligible to pursue post-completion OPT, including a 24-month STEM OPT extension, provided they meet the requirements under 8 C.F.R. § 214.2(f)(10)(ii).

15.     The Student and Exchange Visitor Program (SEVP), a division within U.S. Immigration and Customs Enforcement (ICE), administers the F-1 program and oversees the SEVIS, an electronic database used to track and monitor nonimmigrant students. Designated School Officials are required to update SEVIS with changes in student status, including enrollment, address, and employment. SEVIS is also the mechanism through which student records may be terminated.

16.     Terminations in SEVIS may arise through two general avenues: (1) school-initiated termination by the DSO when a student fails to comply with program regulations (for example, failure to maintain a full course of study, unauthorized employment, or withdrawal from the program); and (2) agency-initiated termination by DHS or ICE under narrowly defined circumstances. The first type of termination typically follows a known and documented change in the student's academic or immigration circumstances. The second type is governed by stricter procedural and substantive requirements.

17.     The regulations governing agency-initiated termination are found at 8 C.F.R. § 214.1(d). Under this provision, DHS may terminate a nonimmigrant's status only in three defined scenarios: (1) when a waiver of inadmissibility or other benefit granted under INA § 212(d)(3) or (4) is revoked; (2) when Congress introduces a private bill seeking to confer lawful permanent

resident status on the individual; or (3) when DHS publishes a notice in the Federal Register identifying a specific national security, diplomatic, or public safety basis for terminating status for a particular class of noncitizens. Outside of these enumerated circumstances, the regulation does not authorize ICE or DHS to unilaterally terminate a nonimmigrant's status.

18.    In practical terms, this means that the mere revocation of a visa by the U.S. Department of State—even for reasons such as an arrest, public safety concerns, or foreign policy considerations—does not by itself affect a student's in-country F-1 status. A revoked visa only prevents a noncitizen from reentering the United States after travel abroad; it does not nullify the individual's lawful status if they are already in the United States.

19.    ICE's own policy guidance confirms this principle. Specifically, ICE Policy Guidance 1004-04 (June 7, 2010)[3] states that visa revocation is not, by itself, a valid cause for terminating a student's SEVIS record. Instead, the student may continue with their course of study and remain lawfully present in the United States until the completion of the program or any authorized OPT period, provided they continue to comply with the F-1 regulations.

20.    This position is reinforced by the Department of State's Foreign Affairs Manual (FAM)[4], which governs visa issuance and revocation. The FAM distinguishes between the visa (an entry document) and the status granted by U.S. Customs and Border Protection upon admission. Even where the State Department revokes a visa, the individual's underlying status remains intact.

21.    DHS regulations at 8 C.F.R. §§ 214.1(e)-(g) further define certain conduct that may constitute a failure to maintain status, such as unauthorized employment, misrepresentation, or a

---

[3] ICE Policy Guidance 1004-04 –Visa Revocations (June 7, 2010), available at
https://www.ice.gov/doclib/sevis/pdf/visa_revocations_1004_04.pdf.
[4] Guidance Directive 2016-03, 9 FAM 403.11-3 – VISA REVOCATION (Sept. 12, 2016),
available at https://www.aila.org/library/dos-guidance-directive-2016-03-on-visa-revocation.

conviction for a crime of violence where the maximum penalty exceeds one year. However, mere arrest records or dismissed charges, such as in Plaintiff's case, do not constitute grounds for termination of status.

22.    It is also significant that SEVIS terminations, once entered, generally result in the student becoming immediately out of status. The termination effectively cuts off eligibility for employment under OPT, precludes lawful travel and reentry, and may trigger accrual of unlawful presence, with potentially serious consequences including bars to reentry and ineligibility for future immigration benefits.

23.    The immigration courts have no ability to review the SEVIS termination here because the process is collateral to removal.[5] Only the presence or absence of lawful status can be reviewed by the immigration judge. The termination of a SEVIS record therefore constitutes final agency action for purposes of APA review.

24.    Despite these severe consequences, students are not guaranteed a formal hearing or adjudication before SEVIS termination unless the matter is referred to immigration court. However, under the Administrative Procedure Act (APA), an agency's decision to terminate a SEVIS record constitutes final agency action and is subject to judicial review. Courts have recognized that students may seek relief where SEVIS terminations are carried out without legal authority or due process.

25.    Revocation of a visa or the existence of an arrest record, without more, does not authorize the government to terminate SEVIS status or render a student deportable. Where such

---

[5] *See Nakka v. United States Citizenship & Immigr. Servs.*, 111 F.4th 995, 1007 (9th Cir. 2024); *Jie Fang v. Dir. United States Immigr. & Customs Enf't*, 935 F.3d 172, 183 (3d Cir. 2019).

terminations occur without notice, process, or adherence to regulatory limits, they give rise to

claims under the APA and the Due Process Clause of the Fifth Amendment.

**Unlawful Termination of Plaintiff's SEVIS Record**

26.     On or about April 8, 2025, Plaintiff's university's international student office discovered

and notified Plaintiff that her SEVIS record had been terminated by DHS, without prior notice.

The SEVIS system reflected the notation: "TERMINATION REASON: OTHERWISE

FAILING TO MAINTAIN STATUS – Individual identified in criminal records check and/or has

had their VISA revoked. SEVIS record has been terminated."

27.     Plaintiff's university did not initiate or request the termination. The sole stated basis

combines two vague assertions: that Plaintiff was "identified in [a] criminal records check" or

that she "has had [her] visa revoked." No further detail or evidence was provided to Plaintiff or

the school.

28.     Plaintiff is unaware of the factual basis for the termination of their SEVIS status.

29.     On April 11, Plaintiff received an email notice from the U.S. Department of State, the

Bureau of Consular Affairs Visa Office, that her F-1 visa had been revoked.

30.     Plaintiff's last entered the U.S. on February 15, 2025, on her F1 visa. The visa was issued

on January 27, 2025 and valid until January 22, 2030. Her Form I-94 lists the duration of her F-1

status as "D/S" (Duration of Status) on her, meaning she may remain in the United States so long

as she maintains a full course of study or is otherwise in a valid period of OPT.

31.     With her SEVIS record terminated, Plaintiff immediately ceased to be in valid F-1 status.

Her employment authorization under OPT, which is contingent on maintaining F-1 status, was

effectively canceled. Plaintiff's employer, upon learning of her loss of status, had no choice but

to place her on unpaid leave, and is poised to terminate her employment entirely absent quick reinstatement of her status. She now faces the imminent threat of removal from the country she has stayed for years, the destruction of the career she has built, and separation from her friends and community, particularly her husband, with whom she was in a marriage for over four years. Plaintiff has been experiencing extreme stress and anxiety because of her SEVIS termination. Plaintiff has been on anti-depressant prescribed by her family doctor.

32.     DHS gave Plaintiff no prior notice that her status was in jeopardy, no chance to explain or refute any concerns, and no formal notice even at the time of termination. To date, Plaintiff has never received any written notice or correspondence from DHS explaining why her status was terminated or what "criminal record" or other issue triggered this draconian action. The only information is the terse notation in SEVIS that the school relayed to her.

33.     Plaintiff has scrupulously complied with all requirements of her status. She maintained full-time enrollment throughout her Ph.D. program and completed her degree. She timely applied for and received OPT work authorization with all required endorsements from her DSO and USCIS. She has not engaged in any unauthorized employment or other visa violations.

34.     The purported reasons stated in SEVIS are baseless as applied to Plaintiff: She did not "fail to maintain status" in any manner within her control or knowledge. The reference to "criminal records check" presumably alludes to Plaintiff's arrest over seven years ago. In 2017, while a graduate student, Plaintiff was arrested on suspicion of a misdemeanor offense; the charge was dismissed and did not result in any conviction or admission of guilt.

35.     Plaintiff also acknowledges that in 2017, while residing in Kansas as a student, she was found guilty of speeding in violation of K.S.A. § 8-1558, a non-criminal traffic infraction. The

court imposed a $32 fine and $108 in court costs, which Plaintiff promptly paid. This offense did not involve violence, dishonesty, or any element of moral turpitude.

36.     Plaintiff's SEVIS termination appears to be part of a broader, unexplained pattern of DHS and ICE taking adverse immigration action against international students based solely on vague references to background checks or visa revocations. Disturbingly, this crackdown seems disproportionately targeted students of certain group, race and national origins, particularly those from African, Arab, Middle Eastern, Muslim, and Asian countries.

## CAUSES of ACTION

### Count I – Violation of Administrative Procedure Act (Unauthorized SEVIS Termination)

37.     Plaintiff re-alleges and incorporates by reference all foregoing paragraphs.

38.     The APA provides that a reviewing court shall hold unlawful and set aside agency action that is "in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C).

39.     Defendants' termination of Plaintiff's F-1 status and SEVIS record constitutes "agency action" under the APA. It is a final agency action that has determinate legal consequences for Plaintiff, and Plaintiff has no other adequate remedy in court.

40.     Defendants' actions were not in accordance with law and in excess of their statutory and regulatory authority.

41.     Defendants lacked the authority to remove Plaintiff from F-1 status.

42.     Defendants' actions were without authorization under the APA.

### Count II – Violation of Administrative Procedure Act (Arbitrary and Capricious SEVIS Termination)

43.     Plaintiff re-alleges and incorporates all prior paragraphs.

44.     The APA provides that a reviewing court shall hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

45.     A student must actually violate a material term of their nonimmigrant status,  such as failing to enroll or working illegally, or be convicted of certain crimes before their status can be terminated. Nothing in the Plaintiff's criminal or immigration background provides a basis for termination.

46.     Defendants' decision to terminate Plaintiff's status had no rational connection to any legitimate regulatory purpose.

47.     Additionally, Defendants failed to consider Plaintiff's individual circumstances at all. There is no indication any discretionary, case-by-case analysis was done; it appears to have been a blanket automated action done by computers.

48.     Defendants ignored the substantive limits of the F-1 status rules by effectively treating a mere arrest or unproven allegation or traffic infraction as equivalent to a violation warranting status termination.

49.     Defendants' actions were arbitrary and capricious under the APA.

### Count III – Violation of Fifth Amendment (Procedural Due Process)

50.     Plaintiff re-alleges and incorporates all prior paragraphs.

51.     The Fifth Amendment to the U.S. Constitution provides that no person shall be "deprived of life, liberty, or property, without due process of law." Plaintiff is entitled to its protections while present in the United States.

52.     Defendants' actions implicated both property and liberty interests of Plaintiff. She had a legitimate claim of entitlement to her F-1 status and OPT employment authorization, which constitutes a property interest. Plaintiff also had important liberty interests in continuing to live, study, and work in the U.S. free from arbitrary governmental interference.

53.     Furthermore, the designation of her status termination with a reference to criminal conduct has impugned her reputation and thus implicates a liberty interest under the "stigma-plus" doctrine.

54.     Defendants deprived Plaintiff of these interests when they terminated her SEVIS record and effectively ended her lawful immigration status on April 8, 2025. This deprivation was carried out with no notice and no opportunity to be heard, either before or after the termination.

55.     Plaintiff notes that she was not in removal proceedings at the time of the status termination; DHS chose an administrative shortcut. Plaintiff was inside the U.S. in lawful status, and she did not waive any rights.

56.     Defendants' actions have effectively created and disseminated a false and derogatory official record indicating Plaintiff failed to maintain status due to criminal issues. This will be accessible to other immigration officials, law enforcement, and employers. Yet Plaintiff was given no chance to clear her name or challenge the stigma.

57.     As a direct and proximate result of Defendants' denial of procedural due process, Plaintiff has suffered the harms described above. The deprivation is ongoing –each day out of status and under threat of removal, is a continuing harm.

### Count IV – Violation of Administrative Procedure Act (Procedural Due Process)

58.     Plaintiff re-alleges and incorporates all prior paragraphs.

59.     The APA provides that a reviewing court shall hold unlawful and set aside agency action that is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

60.     On or about April 8, 2025, Plaintiff was notified that her SEVIS record had been terminated by DHS, without prior notice.

61.     DHS gave Plaintiff no prior notice that her status was in jeopardy, no chance to explain or refute any concerns, and no formal notice even at the time of termination.

62.     Defendants acted contrary to law and failed to follow required procedure.

### Count V – Violation of APA and Accardi Doctrine

63.     Plaintiff re-alleges and incorporates all foregoing paragraphs.

64.     In addition to the individual unlawfulness of Defendants' action against Plaintiff, the policy and pattern under which they acted is unlawful. Defendants have implemented an unannounced policy or practice of terminating F-1 student statuses based on improper criteria, such as mere arrest records or national security flags, in a manner that violates DHS's own regulations and procedures and discriminates on the basis of national origin. This cause of action challenges that broader policy/practice under the APA and the Accardi doctrine. *Accardi v. Shaughnessy*, 347 U.S. 260 (1954)).

65.     This crackdown disproportionately targeted students of certain group, race and national origins, particularly those from African, Arab, Middle Eastern, Muslim, and Asian countries.

66.     Defendants use SEVIS terminations as a tool to pressure certain international students to leave the country or self-deport.

67.     The policy and practice described above is reviewable under the APA as either final agency action or as an unlawful general policy that the Court can halt. Defendants' policy fails

APA review for the same reasons given in Count I: it is not in accordance with law, arbitrary and capricious, and contrary to constitutional rights.

## PRAYER FOR RELIEF

68.    Plaintiff respectfully requests that this Court enter judgment in her favor and grant the following relief:

(1) Assume jurisdiction over this matter;

(2) Declare that the termination of Plaintiff's SEVIS status was unlawful;

(3) Vacate and set aside the termination of Plaintiff's SEVIS record;

(4) Order Defendants to restore Plaintiff's SEVIS record and F-1 status with all attendant employment authorization and benefits as if the status had never been interrupted;

(5) Enjoin Defendants from taking any enforcement action against Plaintiff (such as detention or removal) based on the assertion that she is out of status or on any grounds arising from the April 2025 termination of her SEVIS record.

(6) Correct any DHS, ICE, or USCIS records to reflect that Plaintiff is in lawful status and that the prior termination was invalidated, so that no prejudice arises in the future;

(7) Award reasonable attorney's fees and costs pursuant; and

(8) Any further relief that the Court deems just and proper in the circumstances.

Dated: April 17, 2025,            Respectfully submitted

By: /s/Yilun Hu

Yilun Hu
ARDC# 6337682
yhu@huang-hu.com

John Z. Huang
ARDC# 6207137
jhuang@huang-hu.com

*Attorneys for Plaintiff*
Huang & Hu PC
Landing Law Offices (Chicago)

77 W Washington St STE 800
Chicago, IL 60602

Tel: 312-782-2090